## Taylor Estate

*Foulke, Knight & Porter* and *Montgomery, McCracken, Walker & Rhoads,* for accountants.

*Wisler, Pearlstine, Talone & Gerber* and *Roland Fleer,* for guardian of Estate of Francis Gordon Lawson, and in propria persona as claimants for counsel fees.

*Smith, Cahill & Aker,* for beneficiaries.

TAXIS, P. J., July 19, 1956.—The account of Girard Trust Corn Exchange Bank and Gordon A. Hardwick, trustees, was examined and audited by the court on June 18, 1956. . . .

One final matter requires determination. At the audit on June 4, 1956, Roland Fleer, Esq., and Jules Pearlstine, Esq., filed their claims for fees for professional services rendered to the Union Bank and Trust Company of Bethlehem as guardian of the Estate of Francis Gordon Lawson, a minor, who is also a beneficiary under this trust.

Their appearance slip asserts the claim as follows:

"For over two years the undersigned have rendered legal services in behalf of the minor in order to secure for him payments of his maintenance, education and support, and also to assert the claim that his interest in the estate is vested and that his guardian is entitled to the entire income from his share of the principal. These services have been substantial over almost the entire period and have entailed a considerable amount of work, yet the undersigned have received no compensation whatsoever. The trustees have in their hands a substantial amount of income accumulated from the minor's share of the principal, over and above the income expended for his maintenance, support, and education—approximately $7,500. The undersigned request the Court to allow them out of this accumulated balance of income, or out of the minor's share of the principal, compensation for their services in such amount as the Court deems proper. A detailed statement of the services for which compensation is requested, will be submitted to the Court."

The hearing on these claims was continued to June 18, 1956, at which time Mr. Fleer submitted a "Statement of Legal Services rendered for Francis Gordon Lawson, beneficiary, a minor, pursuant to employment by Francis X. Lawson, the surviving natural parent, and Union Bank and Trust Company of Bethlehem, guardian of the estate". Mr. Pearlstine likewise submitted an itemized statement of the work he performed.

The trustees vigorously oppose the allowance of these fees as requested from the fund presently being accounted for.

The minor's estate consists of assets received from the following sources: (1) Inter vivos trust created by Marjory Hardwick, grandmother (minor's interest approximately $85,000), but not presently before the

court; (2) testamentary trust created by the will of Roland Taylor; this is the trust presently before the court (minor's interest approximately $166,000) ; (3) the estate of the minor, corpus presently about $18,-000, in the hands of the guardian.

Claimants argue that since there are funds of the minor presently before the court, there is no reason why counsel for the minor's guardian should not be paid out of the minor's property; that the fact that their services were rendered for the guardian but that the source of payment is a trustees' accounting in another estate is not fatal to their claim.

It is conceded that these two attorneys were neither hired by nor have they performed any services for the accounting trustee. They take the position that it would expedite matters if this court would allow their fees out of the minor's funds now before the court.

A duly appointed guardian may, of course, in a proper case, employ attorneys to prosecute a claim in the minor's behalf, but the guardian is primarily obligated to pay the attorneys' fees. In the guardian's subsequent accounting he would, of course, be entitled to a credit therefor.

The proper time for allowance of counsel fees for a guardian is at the audit of the guardian's account (cf. Linker's Estate, 37 D. & C. 717 (1940)) and not, as here, at the audit of an account in which the ward is merely a distributee. Claimants, therefore, should look to the guardian for payment of their fees as it was the guardian who hired them. Moreover, it is the function of the guardian to determine the propriety and the reasonableness of counsel fees which will be subject to review by this court upon the event of a guardian's accounting. Claimants call attention to the fact that the guardian does not object to the allowance of fees out of this trust fund. Such failure to object is obvious, for such allowance would thereby

relieve the guardian of exercising its judgment and relieve it of its liability to pay counsel fees. The court was advised by Mr. Fleer that he had sent a bill for professional services to the guardian but no payment was made, because it was decided to "try this procedure". It was indicated to the court that the guardian has not refused to pay a reasonable fee to the claimants.

I have no doubt but that valuable and extensive professional services have been rendered to the guardian, but this trustee's accounting presents neither the proper source, the time, nor place for such allowance. . . .

And now, July 19, 1956, this adjudication is confirmed nisi.